Pfeifer, J.
Factual and Procedural Background
{¶ 1} In June 2005, pursuant to a plea agreement, the trial court found juvenile appellant J.V. delinquent and guilty of one count of felonious assault, one count of aggravated robbery, and the attendant firearm and serious-youthful-offender specifications. The court imposed a blended sentence: at least two years of incarceration at the Ohio Department of Youth Services (“ODYS”) and a stayed adult sentence of three years. Several legal challenges that are immaterial here were filed while J.V. was incarcerated. Near the end of his sentence at ODYS, J.V. was involved in a fight that led the trial court to invoke the theretofore stayed adult sentence.
{¶ 2} On appeal, the court of appeals affirmed the invocation of the stayed adult sentence. We accepted J.V.’s discretionary appeal, which presents two propositions of law. The first proposition of law states, “The invocation of an adult prison sentence upon a juvenile, pursuant to R.C. 2152.14, violates the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.” We conclude to the contrary that the invocation of the adult prison sentence was constitutional. The second proposition of law states, “A juvenile court does not have the authority to impose criminal punishment (including post-release control) after the delinquent child turns 21.” We agree and reverse that portion of the court of appeals decision.
Law and Analysis

Standard of Review

{¶ 3} Because both propositions of law involve only questions of law, our review is de novo. In re M.P., 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 13.

*2
I. Constitutionality of Invocation Provisions of R.C. Chapter 2152

{¶ 4} R.C. Chapter 2152 is a relatively recent enactment of the General Assembly that became law on January 1, 2002. “The overriding purposes for dispositions under this chapter are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender’s actions, restore the victim, and rehabilitate the offender.” R.C. 2152.01(A). We have addressed R.C. 2152.14, which allows for the invocation of the adult portion of a dispositional sentence, three times. State v. D.H., 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209; In re M.P.; and In re C.P., 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729. But we have not addressed the constitutionality of the invocation provisions of R.C. 2152.14 in these cases. Our summary of R.C. 2152.14 in D.H. provides background to our analysis in this case:
R.C. 2152.14(E) governs under what instances a juvenile court may invoke the adult portion of a serious youthful offender’s sentence for failure to successfully complete the traditional juvenile disposition. The statute requires a finding by clear and convincing evidence that the juvenile is “unlikely to be rehabilitated during the remaining period of juvenile jurisdiction” and that the juvenile has engaged in further bad conduct pursuant to R.C. 2512.14(A) or (B) [sic, 2152.14]. R.C. 2512.14(E) [sic] reads:
“(E)(1) The juvenile court may invoke the adult portion of a person’s serious youthful offender dispositional sentence if the juvenile court finds all of the following on the record by clear and convincing evidence:
“(a) The person is serving the juvenile portion of a serious youthful offender dispositional sentence.
“(b) The person is at least fourteen years of age and has been admitted to a department of youth services facility, or criminal charges are pending against the person.
“(c) The person engaged in the conduct or acts charged under division (A), (B), or (C) of this section, and the person’s conduct demonstrates that the person is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction.”
The conduct that can result in the enforcement of an adult sentence includes committing, while in custody or on parole, an act that is a violation of the rules of the institution or the conditions of supervision and that could be charged as any felony or as a first-degree misdemeanor offense of violence if committed by an adult, R.C. 2152.14(A)(2)(a) and *3 (B)(1), or engaging in conduct that creates a substantial risk to the safety or security of the institution, the community, or the victim. R.C. 2152.14(A)(2)(b) and (B)(2).
Pursuant to R.C. 2152.14(D), the court may not invoke the adult sentence without another hearing, and the juvenile has the right to counsel and to present evidence on his behalf. In fact, the right to counsel cannot be waived. Id. Furthermore, the adult portion of the sentence invoked as a result of the evidence may be more lenient, though not more severe, than the original stayed sentence. R.C. 2152.14(E)(2). Since the adult portion of D.H.’s sentence has not been invoked, this opinion does not address the constitutional ramifications of invoking the adult sentence under R.C. 2152.14 in light of Blakely [v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)] and [State v.] Foster [109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470].
The statutory scheme establishes that a juvenile subject to serious-youthful-offender status, despite the carrot/stick of the possible imposition of an adult sentence, remains squarely in the juvenile court system. The juvenile cannot be sent directly to an adult facility for the acts that led to his serious-youthful-offender status. The juvenile court retains jurisdiction. The juvenile would have to engage in separate conduct detrimental to his own rehabilitation in the juvenile system to be committed to an adult facility. The aims of the juvenile system — and its heightened goals of rehabilitation and treatment — control his disposition. To get the rehabilitative benefit of the juvenile system, the juvenile’s case must remain in juvenile court.
D.H., 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, ¶ 31-38.
{¶ 5} With that background, it is clear that the issues before us have not been addressed. In this case, J.V.’s stayed sentence has been invoked, and he has challenged the constitutionality of two aspects of the invocation provisions of R.C. 2152.14, which were specifically not addressed in D.H. First, J.V. argues that the judicial fact-finding necessary to invoke the stayed adult sentence violates J.V.’s right to a trial by jury. Second, J.V. argues that the burden of proof should be the heightened “beyond a reasonable doubt” standard of criminal trials rather than the lesser “clear and convincing” standard of R.C. 2152.14(E)(1). Unlike D.H., which did not require us to “address the constitutional ramifications of invoking the adult sentence under R.C. 2152.14 in light of Blakely and Foster,” today we squarely address these constitutional challenges. D.H. at ¶ 37.

*4
Judicial Fact-finding

{¶ 6} J.V. argues that R.C. 2152.14(E) violates his right to a trial by jury by allowing the judge to substitute his own judgment as to certain factual findings for a jury’s. J.V. relies on Apprendi v. Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which states, “Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.”
{¶ 7} We conclude that the Apprendi line of cases is not even in play, because the juvenile court did not increase the penalty that J.V. was subject to. Apprendi does not prohibit all judicial fact-finding; it prohibits only that which increases the penalty beyond the statutory maximum. Id. The “statutory maximum” is the maximum sentence “allowed by the jury verdict or by the defendant’s admissions at a plea hearing.” State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 7.
{¶ 8} In this case, based on delinquency admissions, J.V. was sentenced to a blended sentence. The adult portion of the sentence was stayed, “pending the successful completion of the traditional juvenile disposition.” R.C. 2152.13(D)(1)(c). When the juvenile court invoked the stayed sentence because J.V. did not successfully complete his juvenile disposition, the judge did not increase J.V.’s sentence; he merely removed the stay. The sentence had already been imposed.
{¶ 9} As we have explained, R.C. 2152.14 does not require the stay to be lifted, and it allows the juvenile court to impose a lesser sentence than the stayed sentence when the adult portion of a stayed disposition is invoked. In In re C.P., we stated:
Once the request is filed, the adult portion of the sentence cannot be invoked without a public hearing. R.C. 2152.14(D). The juvenile has a right to counsel that may not be waived and the right to present evidence on his own behalf, “including evidence that [he] has a mental illness or is a mentally retarded person.” Id. If the person submits evidence that he has a mental illness or is mentally retarded, the court must consider that evidence in determining whether to invoke the adult portion of the SYO [serious youthful offender] dispositional sentence.
Further, pursuant to R.C. 2152.14(E)(1), the court must find by clear and convincing evidence not only that the person serving the juvenile portion of an SYO dispositional sentence engaged in the conduct — the additional bad act — he is accused of, but also that the conduct “demonstrates that [he] is unlikely to be rehabilitated during the remaining period *5 of juvenile jurisdiction.” And under R.C. 2152.14(E)(2), the juvenile court has the discretion to “modify the adult sentence the court invokes to consist of any lesser prison term that could be imposed for the offense.”
Thus, for the bulk of Ohio’s SYO scheme, the juvenile court retains discretion to deal individually with juvenile offenders, and procedural protections are in place before adult punishment can be invoked. Even after additional bad acts by a juvenile, the judge has the discretion not to invoke the adult sentence, or to lessen the one imposed at the time of the juvenile disposition.
In re C.P., 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, at ¶ 80-82.
{¶ 10} Even if the adult portion of the disposition is “only a potential sentence,” the fact remains that J.Y. had been sentenced, and the juvenile court merely removed the stay of that sentence. D.H., 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, at ¶ 30. In doing so, the juvenile court followed the procedure prescribed in R.C. 2152.14. And, most important for present purposes, the juvenile court did not increase a sentence that had been previously imposed. Based on this factual distinction, Apprendi, Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, are not implicated.
{¶ 11} Furthermore, juveniles do not enjoy a right to a trial by jury. In In re Agler, 19 Ohio St.2d 70, 249 N.E.2d 808 (1969), paragraph two of the syllabus, we stated:
Delinquency proceedings in Juvenile Court do not require indictment or trial by jury under the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States or under Sections 5 and 10 of Article I of the Constitution of Ohio.
{¶ 12} This is not to say that juries play no role. In D.H., we stated that juries have an “important role in the adjudicative portion of Ohio’s serious-youthful-offender disposition statutory scheme.” In re D.H., 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, at ¶ 58. But juries are not required, and
removing the jury from the dispositional process does not violate due process. The court’s dispositional role is at the heart of the remaining differences between juvenile and adult courts. It is there that the expertise of a juvenile judge is necessary.
*6 Id. at ¶ 59.
{¶ 13} There is no question that the statutory scheme allows, indeed requires, juvenile courts to make factual determinations before invoking the stayed adult portion of a blended sentence. We conclude that when an invocation hearing is properly conducted pursuant to R.C. 2152.14, as in this case, the juvenile’s right to a trial by jury is not even implicated, let alone violated.
Burden of Proof — Clear and Convincing Evidence
{¶ 14} As explained above, juveniles are not entitled to full constitutional protections during delinquency proceedings. Nevertheless, the United States Supreme Court has stated that “neither the Fourteenth Amendment nor the Bill of Rights is for adults alone.” In re Gault, 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). At a minimum, juveniles are entitled to proceedings that “measure up to the essentials of due process and fair treatment.” Kent v. United States, 383 U.S. 541, 562, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).
{¶ 15} Because of the state’s “parens patriae interest in preserving and promoting the welfare of the child,” Santosky v. Kramer, 455 U.S. 745, 766, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), juvenile proceedings are fundamentally different from adult criminal trials. In re D.H., 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, at ¶ 50. There is, however, no bright line that differentiates between the standard required in criminal trials and that required in juvenile proceedings. See id. at ¶ 51 (“The standard as to whether due process requirements are met is inexact”). We now address whether the juvenile court’s authority to invoke the stayed adult sentence based on clear and convincing evidence, pursuant to R.C. 2152.14(E)(1), comports with due process.
{¶ 16} We do not view the invocation proceeding as akin to a delinquency proceeding. Even J.V. states that the invocation proceeding “is not technically a separate delinquency proceeding.” We also don’t view the invocation proceeding as similar to a full-blown adult criminal trial. Clearly, it is not. We see the invocation proceeding as similar to the proceedings incident to a criminal court’s imposition of a suspended sentence.
{¶ 17} In Ohio, courts typically impose two sentences on a criminal defendant: a prison term and a period of postrelease control. See R.C. 2967.28(B). During the period of postrelease control, the defendant is subject to conditions. R.C. 2967.28(D)(1). Violation of these conditions may result in the trial court imposing a prison term. R.C. 2967.28(F)(3). This approach has been characterized as a carrot-and-stick approach because the carrot of rehabilitation without institutional confinement is offered as an inducement to good behavior, even as the trial court retains the stick of imposing institutional confinement. We view the *7 blended sentences imposed on serious youthful offenders in much the same way. In re D.H., 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, at ¶ 38. In the federal criminal court system, defendants are treated similarly. See United States v. Makres, 851 F.2d 1016, 1019 (7th Cir.1988).
{¶ 18} In both state and federal systems, the trial court decides on its own whether to revoke postrelease control (or probation) and whether to impose an additional prison term. In Ohio, this judicial authority has deep roots.
The power to stay the execution of a sentence, in whole or in part, in a criminal case, is inherent in every court having final jurisdiction in such cases, unless otherwise provided by statute. The suspension being in favor of the prisoner, is for his benefit, and is valid, whether consented to by him or not. When the suspension is upon conditions expressed in the judgment, the prisoner has the right to rely upon such conditions, and so long as he complies therewith the suspension will stand.
Weber v. State, 58 Ohio St. 616, 619, 51 N.E. 116 (1898).
{¶ 19} The United States Supreme Court has stated that “there is no right to a jury trial before probation may be revoked.” Minnesota v. Murphy, 465 U.S. 420, 435,104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), fn. 7. See Gagnon v. Scarpelli, 411 U.S. 778, 781, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), discussing Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). (“Even though the revocation of parole is not a part of the criminal prosecution, we held that the loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process”).
{¶ 20} Because the invocation proceeding is not a criminal proceeding, the fact-finding need not be according to the beyond-a-reasonable-doubt standard required in criminal trials. The clear-and-convincing-evidence standard allowed by R.C. 2152.14(E)(1) is less rigorous, though stronger than a mere preponderance-of-the-evidence standard. We have stated that clear and convincing evidence is that “which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.” Cross v. Ledford, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. The standard requires the judge to have a firm belief or conviction about the facts adduced. We conclude that there is nothing fundamentally unfair about a statutory scheme that authorizes a judge to reach conclusions about facts according to a clear-and-convincing-evidence standard, as R.C. 2152.14(E)(1) does.
{¶ 21} In this case, J.V. had notice of the invocation hearing, he was present at the hearing, he had counsel at the hearing, he had the opportunity to present evidence at the hearing, and he had the opportunity to cross-examine the *8 witnesses called by the state. Based on our examination of the record, the court complied with the statutory framework laid out in R.C. 2152.14. We conclude that J.V. was not denied due process based on the fact that the trial court reached factual conclusions according to a clear-and-convincing-evidence standard.

Jurisdiction of Juvenile Court to Impose a Stayed Sentence after the Juvenile Delinquent Reaches the Age of 21

{¶ 22} J.V. argues that the juvenile court did not have jurisdiction over him when it sentenced him in February 2010. He relies on R.C. 2152.02(C)(6), which states, “The juvenile court has jurisdiction over a person who is adjudicated a delinquent child or juvenile traffic offender prior to attaining eighteen years of age until the person attains twenty-one years of age.”
{¶ 23} This language is straightforward. It states that juvenile courts have jurisdiction over adjudicated delinquents until they are 21 years old. The obvious flip side of that statement is that juvenile courts do not have jurisdiction over adjudicated delinquents once they are 21 years old. There is no need to interpret the statute; we need only apply the facts of this case to the law. Bernardini v. Conneaut Area City School Dist. Bd. of Edn., 58 Ohio St.2d 1, 4, 387 N.E.2d 1222 (1979).
{¶ 24} J.V. turned 21 on March 11, 2009. Accordingly, the juvenile court had no jurisdiction over him after that date. Nevertheless, in February 2010, it held a de novo sentencing hearing to correct the original juvenile disposition, which did not mention postrelease control. At that time, the juvenile court imposed the adult sentence and added postrelease control. Based on the plain language of R.C. 2152.02(C)(6), the juvenile court did not have jurisdiction over J.V. There can be no doubt that the juvenile court acted outside its jurisdiction and therefore that the disposition issued in February 2010 is void.
Conclusion
{¶ 25} For the foregoing reasons, we affirm in part and reverse in part.
Judgment affirmed in part and reversed in part.
O’Connor, C.J., and Lanzinger, Cupp, and McGee Brown, JJ., concur.
Lundberg Stratton and O’Donnell, JJ., concur in part and dissent in part.